U.S. COURTS

PAUL LIETZ
POST OFFICE BOX 266
GREENLEAF, IDAHO 83626

DEC 1 3 2018

Rcvd_____ Filed_____ Time_____
STEPHEN W. KENYON
CLERK, DISTRICT OF IDAHO

---

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

PAUL LIETZ,

   PLAINTIFF,

V.

ROBERT WILKIE, SECRETARY OF THE
DEPARTMENT OF VETERANS' AFFAIRS,

AND

LAWRENCE CARROLL, FORMER VISN-20
DIRECTOR,

AND

MICHEAL J. MURPHY, VISN-20 DIRECTOR,

AND

DAVID A. WOOD, DIRECTOR BOISE VA
MEDICAL CENTER, AND ANDREW
WILPHER, CHIEF OF STAFF BOISE VA
MEDICAL CENTER, AND KERI BARBERO,
CHAIRPERSON, DISRUPTIVE BEHAVIOR
COMMITTEE BOISE VA MEDICAL CENTER,
AND JOHN AND JANE DOE 1 – 25,

   DEFENDANTS.

CASE NO.: *1:18-cv-554-EJL*

---

### COMPLAINT

---

COMES NOW, Plaintiff, and complains and alleges the following:

---

COMPLAINT

## I. INTRODUCTION

1. Plaintiff Paul Lietz ("Lietz" or "Plaintiff") brings this action against Robert Wilkie ("Wilkie") Secretary of the Department of Veterans' Affairs, Micheal J. Murphy, ("Murphy") former or current VISN-20 Director, David A. Wood ("Wood") Director Boise VA Medical Center, Andrew Wilpher ("Wilpher") Chief of Staff Boise VA Medical Center, Keri Barbero ("Barbero") Director of Disruptive Behavioral Committee, and John and Jane Does 1-25 in their individual capacities for violations of his constitutional rights under _Bivens v. Six Unknown Named Agent_, 403 U.S. 388 (1971) ("Bivens") violations.

## II. JURISDICITION

1. Jurisdiction is conferred upon this Court pursuant to:

   a. _BIVENS v. Six Unknown Named Agents of the Federal Bureau of Narcotics_, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed.2d 619.
   b. 28 U.S.C. § 1331 (Federal Question).
   c. 28 U.S.C. § 1343 (Civil Rights).
   d. 28 U.S.C. §1346(a)(2).
   e. 28 U.S.C. § 1367 (Supplemental Jurisdiction).
   f. 28 U.S.C. § 2202 (Injunctive Relief).
   g. 28 U.S.C. § 2201 (Declaratory Relief).
   h. 28 U.S.C. § 2671 (Federal Tort Claims Act).
   i. 28 U.S.C. § 2680.
   j. 42 U.S.C. § 1985.
   k. 5 U.S.C. § 701-708 (Administrative Procedures Act).

2. This Court has both subject matter and personal jurisdiction over the defendants.

## III. VENUE

1. Venue is proper pursuant to 28 U.S.C. 1391(a)(1) & (2); (b)(2) & (3); and (c) in that all events or omissions giving rise to this suit occurred in this judicial district, thereby all Defendant are subject to this court jurisdiction. Otherwise, venue is proper because the acts or omissions complained of occurred in the State of Idaho.

## IV. PARTIES AND STANDING

1. Plaintiff resides in the State of Idaho and has standing to bring this action because he has been directly affected, harmed, and victimized by the unconstitutional and unlawful conduct complained of herein. His injuries are directly and proximately related to the conduct of the defendant each and every one of them, whether they acted jointly or individually.

2. Defendant, Michael J. Murphy is the VISN-20 Director, and is an employee of the Department of Veterans' Affairs charged with adhering to and complying with all Constitutional, Statutory, and Regulatory mandates and is being sued in his individual capacity.

3. Defendant, David Wood, is the Director of the Boise VA Medical Center and is an employee of the Department of Veterans' Affairs charged with adhering to all Constitutional, Statutory, and Regulatory mandates and is being sued in his individual capacity.

4. Defendant, Andrew Wilpher is the Chief of Staff at the Boise VA Medical Center and is an employee of the Department of Veterans' Affairs charged with adhering to and complying with all Constitutional, Statutory, and Regulatory mandates and is being sued in his individual capacity.

5. Defendant, Keri Barbero is the Chairperson of the Disruptive Behavior Committee, and is an employee at the Boise VA Medical Center, Department of Veterans' Affairs charged with adhering to and complying with all Constitutional, Statutory, and Regulatory mandates and is being sued in her individual capacity.

6. Defendant, John and Jane Does 1-10 are employees of the Boise VA Medical Center, Department of Veterans' Affairs and are in part charged with acting in or has been representing the Disruptive Behavior Committee in some capacity and are charged with adhering with all

Constitutional, Statutory, and Regulatory mandates and are being sued in their individual

capacities.

### V. UNDISPUTABLE BACK GROUND MATERIAL FACTS REGARDING THE MAY 21, 2015 ORDER OF BEHAVIORAL RESTRICTIONS ("OBR")

1.    On May 21, 2015 the Boise VA Medical Center created a document entitled "Order of

Behavioral Restrictions"[1] ("OBR"), which alleges that the Plaintiff, "Demonstrated disruptive and

threatening behavior towards a Boise Veterans Affairs Medical Center staff member."  However,

the agencies representatives have failed to provide any evidence that Plaintiff was "at the VA

medical facility," or that Plaintiff's alleged disruptive behavior "has jeopardized or could

jeopardize the health or safety of other patients, VA staff, or guests at the facility, or otherwise

interfere with the delivery of safe medical care to another patient at the facility," which is

mandated pursuant to 38 C.F.R. § 17.107(b) and (b)(1) as following:

> "(b) The time, place, and/or manner of the provision of a patient's medical care may be restricted by written order by the Chief of Staff of the VA Medical Center of jurisdiction or his or her designee if:
>      1. The Chief of Staff or designee determines pursuant to paragraph (c) of this section that the patient's behavior at a VA medical facility has jeopardized or could jeopardize the health or safety of other patients, VA staff, or guests at the facility, or otherwise interfere with the delivery of safe medical care to another patient at the facility."

The agency representatives are mandated under 38 C.F.R. § 17.107 that any "OBR" be

"narrowly tailored to address the disruptive behavior,"[2] and to "include a summary of the

pertinent facts and bases regarding the need for the restriction,"[3] which they did not provide.

---

[1] See the Order of Behavioral Restriction dated May 21, 2015.
[2] See 38 C.F.R. § 17.107(b)(2).
[3] See 38 C.F.R. § 17.107(b)(5).

2.   On May 29, 2015 Plaintiff received a Progress Note from the Release of Information section of the Boise VA Medical Center.

3.   On June 1, 2015 the "OBR" was given to Plaintiff by the Roger Banks Chief of Police who clearly states that he is a DBC Member.

4.   On June 3, 2015 Plaintiff made a timely and lawful request under the FOIA and Privacy Act for documents regarding the May 21, 2015 "OBR."

5.   On June 4, 2015 the "FOIA/Privacy Act request was mailed to the Boise VA Medical Center by Certified Return Receipt Mail #7012 3050 0000 6585 3375.

6. On June 9, 2015 Keri Barbero responded to Plaintiff's June 3, 2015 letter wherein she states:

"I wanted to clarify for you that the incident that was cited on May 5, 2015 in the original letter sent May 21, 2015 from the Disruptive Behavior Committee Co-Chair, was over the phone, it was not implying that you were present at the Boise VAMC on May 5, 2015."

7.   On August 8, 2015 a lawful representative, Virginia Amundson of the Boise VA Medical Center signed for the FOIA/Privacy Act request.

8.   On June 13, 2015 Plaintiff received the "OBR" through the United Stated Postal Service.

9.   On June 15, 2015 Plaintiff sent a letter to the Boise VA Medical Center and demanded that they define the terms "Disruptive" and Threatening" as it was used in the "OBR."  As of the date of this complaint the agency representatives have failed or outright refused to define these terms.

10. On June 15, 2015 Plaintiff timely and lawfully filed an appeal to the May 21, 2015 "OBR" and outlined the multitude of statutory violations on the part of the agency in their execution of the "OBR" and there continued unlawful enforcement.

11. On June 15, 2015 Plaintiff mailed his appeal to the Boise VA Medical Center through Certified Return Receipt Mail #7015 0640 0000 2602 0535.

12. On June 18, 2015 a lawful representative, Claude West of the Boise VA Medical Center signed for the appeal.

13. On July 13, 2015 Plaintiff received a letter from Jerold Flyer, Acting Chief of Staff acknowledging receipt of the appeal.

14. On July 21, 2015 Plaintiff made another request for documents from the Boise VA Medical Center, Release of Information Section. Upon making that request the Release of Information Section gave Plaintiff 22 pages.

15. On August 10, 2015 Plaintiff made another demand under the FOIA/Privacy Act for records.

16. On August 12, 2015 Plaintiff sent a response to the Boise VA Medical Center in response to Mr. Gerald Flyers letter dated July 13, 2015 entitled "Patient Record Behavioral Flag Appeal."

17. On August 12, 2015 Plaintiff had a conversation via telephone with Jerald Flyer regarding the "OBR" and his letter dated July 3, 2015. In this discussion Mr. Flyer admitted that the agency representatives did not forward the appeal to the VISN-20 Network Director.

18. On August 12, 2015 Plaintiff prepared and executed a letter regarding the August 12, 2015 conversation between Gerald Flyer and Plaintiff.

19. On August 30, 2015 Jerald Flyer sent Plaintiff the VISN-20 address.

20. On September 10, 2015 Plaintiff sent Jerald Flyer a formal complaint and demand that the "OBR" be rescinded immediately.

21. On October 20, 2015 the agency forced Plaintiff into signing the Flagged Patient on Station Authorization or face arrest.  Plaintiff wrote on the form the following:

> Define the terms "respectful, and tactful manner."
> Signed under duress and threats of being arrested.
> This form is vague and ambiguous.  This form violates the Order of Behavioral Restriction.

22. On October 29, 2015 Plaintiff received a letter on behalf of David A. Wood, wherein the Boise VA Medical Center responded to Plaintiff's letter dated September 10, 2015 which was addressed to the VISN-20 director.  The Boise VA Medical Center responded in an attempt to speak for the VISN-20 Network Director regarding the Appeal.  However, Plaintiff is lost to exactly what they were trying to do with their response.

23. On November 9, 2015 Plaintiff sent a Formal Complaint to the Secretary of the VA, VISN-20 Director, and the Boise VA Medical Center Director demanding that the "OBR" revoked and advised the Secretary of the multitude of violation of Federal laws and Agency regulatory mandates.

24. On November 30, 2015 Plaintiff received a letter from Keri Barbero, Chairperson for the Disruptive Behavioral Committee telling the Plaintiff that the Flagged Patient on Station Form is used by the VA Police when they determine that a patient can behave in a polite, respectful manner while at the Boise VA Medical Center.  This is not what the "OBR" was issued for. Plaintiff argues this is in violation of the "OBR" because the "OBR" does not allow the VA police to use this form, it specifically mandated escort.

25. On December 8, 2015 Plaintiff sent the Boise VA Medical Center a reply to the agency's letter dated November 30, 2015.

26. On July 7, 2016 Plaintiff received a letter from Keri Barbero, wherein she alleges that the Disruptive Behavior Committee meet and allege that they reviewed the incident of behavior that you [plaintiff] exhibited at the Boise VA Medical Center on November 12, 2009.  They determined to remove the flag.  However, Plaintiff was never at the Boise VA Medical Center, nor was he in the State of Idaho on November 12, 2009.  Therefore, they have fabricated false material facts regarding this matter to support their unlawful actions.

27. On August 18, 2016 Plaintiff sent his reply to the Boise VA Medical Center regarding the agency's letter dated July 7, 2016.

28. On August 18, 2018 Plaintiff sent an amended letter.

### VI. UNDISPUTABLE MATERIAL FACTS REGARDING JUNE 6, 2017
### ORDER OF BEHAVIORAL RESTRICTIONS ("OBR")

1. On June 6, 2017 Keri Barbero, prepared, executed, and caused to be mailed an Order of Behavioral Restrictions "OBR,"[4] which states:

"Due to your abusive language and aggressive behaviors you have demonstrated during more than one conversation/correspondence with VA staff at more than one location, we are concerned about your potential for violence towards VA employees."

2. The June 9, 2017 "OBR" has a postage stamp dated June 9, 2017.[5]

3. On June 14, 2017 Claimant received the June 6, 2017, "OBR."[6]

4. On June 5, 2017 there was a series of emails that transpired among what appears to be between 9 or so people.  A partial list of the conversation from those emails are as follows:

Email dated June 5, 2017, 2:58 P.M., states, "It is my opinion that Mr. Lietz should be called by one of our police officers.  He is free to state his opinion, but his language and aggression in this letter is harassing.  I spoke to Chief Harris and he agreed that having

---

[4] See the OBR, marked Exhibit "A."
[5] See the mailing envelop which is contained in Exhibit "A."
[6] See the received date on the mailing envelope, and letter, which is in contained in Exhibit "A."

police call him may be helpful. This is one of at least 10 letters like this, but this one is much more vulgar. It appears that he is escalating in the last 2 letter he has sent."

Email dated June 5, 2017, 3:03 P.M., states, "I concur on the escalation. I did a quick reading of the letter but did not see anything about physical threats. I would say we start at police check In."

Email dated June 5, 2017, 3:07 P.M., states, "I didn't see direct threats either, but his language is vulgar and volatile – more so than any other letter. The last 2 have been much worse than any others."

5. On June 19, 2017 filed a request for information the agency relied upon to execute the "OBR."

6. On June 21, 2017 Claimant had an 11:00 A.M., appointment, which was unknown to Claimant cancelled by the Boise VA Medical Center. The Boise VA Medical Center reschedule this appointment for 1:00 P.M., the same day.

7. On June 22, 2017 Claimant returned to the Boise VA Medical Center to the pharmacy to pick-up medication for further "Examinations, treatments, or Care."

8. On June 26, 2017 Claimant prepared and executed his Appeal. This appeal was timely filed and mailed to the Boise VA Medical Center on the same day, by Certified Return Receipt Mail #7015 1520 0000 2329 8947. It was also mailed to the VISN-20 Director on the same day by Certified Return Receipt Mail #7015 1520 0000 2329 8923.[7]

9. On June 27, 2017 the Appeal was received by the VISN-20 Director.[8]

10. On June 28, 2017 the Appeal was received by the Boise VA Medical Center Director.[9]

---

[7] See the Appeal, which is marked Exhibit "C."
[8] See the Certified Green Mailed Return Slip, which is contained in Exhibit "C."
[9] See the Certified Green Mailed Return Slip, which is contained in Exhibit "C."

11. On July 7, 2017 the agency representatives sent Plaintiff a set of document in response to Plaintiff's June 26, 2018 request.

12. On July 10, 2017 the agency representatives acknowledged receipt of Plaintiff FOIA/Privacy Act request for information on June 26, 2018, which was Plaintiff's appeal to the "OBR."

13. On July 11, 2017 Claimant had a scheduled appointment at the Boise VA Medical Center.

14. On July 20, 2017 the agency issued its initial agency decision and provided numerous documents that the agency redacted.  The information redacted is public information relating to representative of the agency and those documents are not personal but are agency records.

15. On July 21, 2017 Claimant had a scheduled appointment at the Boise VA Medical Center.

16. On August 3, 2017 Plaintiff responded to the agency's July 10, 2018 letter disputing their redaction of documents.

17. On August 11, 2017 Claimant had a scheduled appointment at the Boise VA Medical Center.

18. On August 11, 2017 the agency responded Plaintiff June 26, 2017 letter.

19. On August 15, 2017 the Office of General Counsel acknowledges receipt of Plaintiff's August 3, 2017 appeal.

20. On August 18, 2017 Claimant had a scheduled appointment at the Boise VA Medical Center.

21. On August 24, 2017 Claimant returned to the Boise VA Medical Center to pick-up a shortage of medication for further "Examinations, Treatment, or Care."

22. On August 29, 2017 Plaintiff disputed the agency's letter dated August 11, 2017.

23. On August 31, 2017 Plaintiff appealed the Initial Agency Decision dated July 20, 2017.

24. On September 6, 2017 Claimant returned to the Boise VA Medical Center to pick-up a shortage of medication, went to the sleep clinic, and specialty clinic for follow up "Examinations, Treatment, or Care."

25. On September 8, 2017 Claimant returned to the Boise VA Medical Center specialty clinic for further care or treatment for further "Examinations, Treatment, or Care," and Release of Information.

26. On September 12, 2017 the Office of General Counsel acknowledged receipt of Plaintiff's August 31, 2017 appeal.

27. On September 13, 2017 Claimant returned to the Boise VA Medical Center for a lab appointment for further "Examinations, Treatment, or Care."

28. On September 15, 2017 Claimant returned to the Boise VA Medical Center to the green team for further "Examinations, Treatment, or Care."

29. On September 25, 2017 Claimant returned to the Boise VA Medical Center to pick-up a shortage of medication for further "Examinations, Treatment, or Care."

30. On September 26, 2017 Claimant returned to the Boise VA Medical Center to the blue team for an appointment for further "Examinations, Treatment, or Care."

31. On October 2, 2017 Claimant returned to the Boise VA Medical Center to the dental clinic for an appointment for further "Examinations, Treatment, or Care."

32. On October 13, 2017 Claimant returned to the Boise VA Medical Center to the green team for an appointment and pick up medication for further "Examinations, Treatment, or Care."

33. On October 16, 2017, Claimant returned to the Boise VA Medical Center to the lab for further "Examinations, Treatment, or Care" and Release of Information.

34. On October 20, 2017 Claimant returned to the Boise VA Medical Center to pick-up a shortage of medication for further "Examinations, Treatment, or Care" and Release of Information.

35. On October 20, 2017 Plaintiff sent a letter again seeking the agency to define the terms, "Abusive and Aggressive Behavior." The agency has failed or refused to define these terms.

36. On November 2, 2017 the Office of General Counsel issued a final agency decision, denying Plaintiff's June 19, 2017 request.

37. On November 6, 2017 Claimant returned to the Boise VA Medical Center to the blue team, lab, and pick-up medication for further "Examinations, Treatment, or Care."

38. On November 8, 2017 Claimant returned to the Boise VA Medical Center to the lab and prosthetics to pick up orthotics for further "Examinations, Treatment, or Care."

39. On November 9, 2017 Claimant returned to the Boise VA Medical Center to the green team for further "Examinations, Treatment, or Care."

40. On November 22, 2017 Claimant returned to the Boise VA Medical Center to the blue team and pharmacy for further "Examinations, Treatment, or Care."

41. On December 6, 2017 Claimant returned to the Boise VA Medical Center to the lab for further "Examinations, Treatment, or Care."

42. On December 7, 2017 Claimant returned to the Boise VA Medical Center to the green and purple team for further "Examinations, Treatment, or Care."

43. On December 8, 2017 Claimant returned to the Boise VA Medical Center to the purple team and prosthetics for further "Examinations, Treatment, or Care."

44. On December 21, 2017 Claimant returned to the Boise VA Medical Center to Mental Health Clinic and to pick-up medication for further "Examinations, Treatment, or Care."

45. On January 3, 2018 Claimant returned to the Boise VA Medical Center to the lab and pick-up medication for further "Examinations, Treatment, or Care."

46. On January 12, 2018 Claimant returned to the Boise VA Medical Center to the specialty clinic for further "Examinations, Treatment, or Care."

47. On January 24, 2018 Claimant returned to the Boise VA Medical Center to radiology and to pick-up medication for further "Examinations, Treatment, or Care."

48. On January 31, 2018 Claimant returned to the Boise VA Medical Center to the lab for further "Examinations, Treatment, or Care."

49. On February 2, 2018 Claimant returned to the Boise VA Medical Center to the green team for further "Examinations, Treatment, or Care."

50. On February 8, 2018 Claimant returned to the Boise VA Medical Center to the dental clinic for further "Examinations, Treatment, or Care."

51. On February 14, 2018 Claimant returned to the Boise VA Medical Center to the mental health clinic for further "Examinations, Treatment, or Care."

52. On February 22, 2018 Claimant returned to the Boise VA Medical Center to the emergency room. As a result of that appointment the Emergency Room sent me to the pharmacy and radiology for further "Examinations, Treatment, or Care."

53. On February 26, 2018 Claimant returned to the Boise VA Medical Center to the pharmacy to pick-up medication for further "Examinations, Treatment, or Care."

54. On February 28, 2018 Claimant returned to the Boise VA Medical Center to the lab and to pick-up medication for further "Examinations, Treatment, or Care."

55. On March 2, 2018 Claimant returned to the Boise VA Medical Center to the green team for further "Examinations, Treatment, or Care."

56. On March 22, 2018 Claimant returned to the Boise VA Medical Center to the pharmacy to pick-up medication for further "Examinations, Treatment, or Care."

57. On March 23, 2018 Claimant returned to the Boise VA Medical Center to the pharmacy to pick-up medication for further "Examinations, Treatment, or Care."

58. On March 26, 2018 Claimant returned to the Boise VA Medical Center to the sleep study clinic for future "Examinations, Treatment, or Care."

59. On April 2, 2018 Claimant returned to the Boise VA Medical Center to the lab for further "Examinations, Treatment, or Care."

60. On April 3, 2018 Claimant returned to the Boise VA Medical Center to the green team for further "Examinations, Treatment, or Care."

61. On April 12, 2018 Claimant returned to the Boise VA Medical Center to the sleep study clinic for further "Examinations, Treatment, or Care."

62. On April 23, 2018 Claimant returned to the Boise VA Medical Center to the blue team and to pick-up medication for further "Examinations, Treatment, or Care."

63. On April 24, 2018 Claimant returned to the Boise VA Medical Center to the blue team for further for further "Examinations, Treatment, or Care."

64. On April 27, 2018 Claimant returned to the Boise VA Medical Center to the lab for further "Examinations, Treatment, or Care."

65. On April 30, 2018 Claimant returned to the Boise VA Medical Center to the lab for further "Examinations, Treatment, or Care."

66. On May 1, 2018 Claimant returned to the Boise VA Medical Center to the green team for further "Examinations, Treatment, or Care."

67. On May 2, 2018 Claimant returned to the Boise VA Medical Center to radiology for further "Examinations, Treatment, or Care."

68. On May 8, 2018 Plaintiff filed an Administrative Claim regarding the June 6, 2018 Order of Behavioral Restriction.

69. On May 23, 2018 the Office of General Counsel sent an acknowledgement of receipt of Plaintiff's Administrative Claim.

70. On May 25, 2018 Claimant returned to the Boise VA Medical Center to the blue team, ROI, and pharmacy to pick-up medication for further "Examinations, Treatment, or Care."

71. On May 30, 2018 Claimant returned to the Boise VA Medical Center to the blue tram, lab, and pharmacy to pick-up medication.

72. On June 4, 2018 Claimant returned to the Boise VA Medical Center to the green team.

73. On June 19, 2018 Plaintiff received the agency final denial of the Administrative Claim.

74. On November 26, 2018 Plaintiff sent a reply to the Office of General Counsel's June 19, 2018 denial.

75. From approximately January 1, 2017, through to present day Plaintiff has filed numerous responses to the correspondence generated by representatives of the Boise VA Medical Center.

76. From approximately January 1, 2017, through to present day, the same defendants have acted individually, or as a collective group, to undermin Plaintiff's exercising of his rights to defend himself against the blatant abuses perpetrated by the defendants.

77. From approximately January 1, 2017, through to present day the same defendants have used every means at their disposal to discredit and intimidate Plaintiff into acting and speaking in a manner palatable to them.

78. From approximately January 1, 2017, through to present day the same defendants have used the VA police and/or the OBR process to try and intimidate Plaintiff from filing grievances against those members for their knowing and willful failure to comply with federal statutes and Plaintiff rights.

79. From approximately January 1, 2017, through to present day the same defendants have used the VA police and/or the OBR process to try and intimidate Plaintiff from filing grievances whereby Plaintiff has blown the whistle on those defendants for acting or failing to act in accordance with their respective oath of offices, together with their respective failures to adhere to the Constitutional, Statutory, and Regulatory rights afforded Plaintiff whereby the defendants have knowingly, willfully, deliberately, recklessly, negligently, and with gross malicious and disregard for Plaintiff's rights.

80. The same people have used every means at their disposal to intimidate Plaintiff through the use of the VA police and the OBR process in order to force compliance. The same defendants have forwarded documents to the VA police asking them to review the documents as these representatives have a strong desire to bring criminal charges against Plaintiff. This is nothing more than an attempts by these representatives of the Veterans' Administration to

coerce Claimant into stopping his filing of grievances, responses, and other correspondence with the agency and its representatives wherein Plaintiff does nothing but express himself through speech.

81. At no time, past or present has or did the Plaintiff disrupt any type or form of operations conducted at the Boise VA Medical Center.

82. At no time, has or did the Plaintiff threaten, intimidate, or bully anyone at the Boise VA Medical Center.

83. At no time, past or present has the Plaintiff even had the VA police intervene due to any disruptive behavior conduct or behavior of the Plaintiff, nor has any VA police ever been called to assist other VA staff, guests, or other veterans when the Plaintiff has ever been on VA property, been in any VA facility or anywhere as a matter of fact.

84. At all times the complaints that management has brought out "only" involve Plaintiffs written correspondence or phone calls.  Any complaints involving Plaintiff being at the VA facility involved Plaintiff's exercising of his rights to privacy and other rights.

85. At all times the allegations made by the Boise VA Medical Center in the OBR does not establish any disruptive behavior as mandated under the statutory requirements of 38 C.F.R. § 17.107(b)(1) which requires "<u>that the patient's behavior at a VA medical facility has jeopardized or could jeopardize the health or safety of other patients, VA staff, or guests at the facility, or otherwise interfere with the delivery of safe medical care to another patient at the facility</u>."

How in the good Lords name can emails, phone calls, or written letters "has or could jeopardize the health or safety" of anyone.  Simple answer they cannot!!!!!

86. At all times Plaintiff has asserted his legal and lawful rights under Constitutional, Statutory, and Agency policies and/or procedures.

87. Defendants have failed or otherwise refused to adhere to the statutory mandates of 38 C.F.R. § 17.107, which includes, but is not limited to deliberate, knowing, willful, reckless, and negligent, and an egregious and/or malicious disregard for Plaintiff's rights.

88. No due process was offered, nor given when demanded of procedural and substantive due process and appeal rights as allowed under 38 C.F.R. § 17.107(e), wherein one or more of the defendant's refused or otherwise failed to forward both of the appealed OBR's to the VISN — 20 for review as is mandated under the provisions of 38 C.F.R. § 17.107(e).

89. Other relevant and material evidence involves the following:

| OGC Case Number | FOIA or AMENDMENT TRACKING Number |
| --- | --- |
| 94598 | 17-00128-136 (Cosdon) |
| 55532 | 17-00039-136 (Burningham) |
| 92517 | 17-00073-136 (Tassi) |
| 92832 | 17-00073-136 (Nash) |
| 91892 | 17-05830-F |
| 92244 | 17-06857-F |
| 93851 | 17-09678-F |
| 93906 | 17-02454-F |
| 43942 | 15-18372-FP |
| 92906 (Original 91892) | 17-05830-F (Barbero) |
| 98592 | 18-09119-F |
| 93395 | 17-03514-F |
| | 17-00127-136 (Hoffman) |
| | 17-00139-136 (Johnson) |
| | 18-09961-F (Lambe) |
| | 18-116 (Lambe) |
| | 18-099 |
| | 18-100 |
| | 19-101 |

DBRS Report Numbers

531.150027
531.170229
531.161513
531.180778
531.172145
531.172134
531.170843

## VII. "SHALL" MEANS "SHALL"

1.    The Constitution, Statutes, and Regulations use terms that are either discretionary or

non-discretionary, such as "Shall," "Shall Not," "May," "May Not," "Must," and "Will."  These

terms have been defined by the United States Supreme Court, 9th Circuit Court of Appeals, and

even the Idaho Federal District Court.  These terms have been deliberately twisted and misused

by abusive attorney's in the legal system.

2.    The United States Supreme Court in *Kingdomware Technologist, Inc., v. U.S.,* 136 S. Ct.

1969 (June 16, 2016) states:

"Unlike the word 'may,' which implies discretion,[10] the word 'shall' in a statute usually
connotes a requirement.  When a statute distinguishes between 'may' and 'shall,' it is generally
clear that 'shall' imposes a mandatory duty."[11]

3.    The  9th Circuit has also determined the definition between these words.  In *United Cook*

*Inlet Drift Association v. National Marine Fisheries Services,* 837 F.3d 1055 (September 21, 2016)

stated, " The word 'shall' in a statute generally denotes a mandatory duty."[12]

---

[10] *See also Halo Electronics, Inc., v. Pulse Electronics, Inc.,* 136 S. Ct. 1923 (June 13, 2016), which
states, "When construing a statute, the word 'may' clearly connotes discretion."
[11]*See also Jama v. Immigration and Customs Enforcement,* 543 U.S. 335 (June 13, 2016), states,
"For purposes of statutory construction, the word 'may' customarily connotes discretion, and
that connotation is particularly apt where "may" is used in contraposition to the word 'shall.'"
[12] *See also Vietnam Veterans of America v. Central Intelligence Agency,* 811 F.3d 1068 (January
26, 2016) stated, "The term 'shall' is usually regarded as making a provision mandatory, and the

4. Even the Idaho Federal District Court in *Natural Resources Defense Council v. Abraham*, 271 F. Supp.2d 1260 (July 3, 2003) states:

"Statute's use of the term 'shall' means that the direction is mandatory and does not allow for discretion on agency's part."

5. The Supreme Court of Idaho has even defined the terms. The state high court has stated in *Rangen, Inc. v. Idaho Dept. of Water Resources*, 160 Idaho 251 (2016), "When used in a statute, the word 'may' is permissive rather than the imperative or mandatory meaning of 'shall.'" The state high court in *Paolini v. Albertson' Inc.*, 143 Idaho 547 (2006), stated, "The word "shall" when used in a statute is mandatory." Then in *Twin Falls County v. Idaho Com'n on Redistricting*, 152 Idaho 346 (2012), the court stated, "Words 'must' and 'shall' in a statute are mandatory, and the word 'should' is not." Then the court in *State v. Mosqueda*, 150 Idaho 830

---

rules of statutory construction presume that the term is used in its ordinary sense unless there is clear evidence to the contrary." *U.S. v. Kowalczyk*, 805 F.3d 847 (November 4, 2015) stated, "The word 'shall' as used in statutes is ordinarily the language of command." *Ezell v. U.S.*, 778 F.3d 762 (January 23, 2015) stated, "A statutory time period providing a directive to an agency or public official is not ordinarily mandatory unless it both expressly requires the agency or public official to act within a particular time period and specifies a consequence for failure to comply with the provision. *Meritage Homes of Nevada, Inc., v. F.D.I.C.*, 753 F.3d 819 (April 15, 2014) states, "It is a principle of statutory construction that the word "may," when used in a statute, usually implies some degree of discretion." *Sauer v. U.S. Dept. of Educ.*, 668 F.3d 644 (February 3, 2012), states, "Word 'may,' when used in a statute, usually implies some degree of discretion, especially when the same provision uses both "may" and 'shall,' in which case, the normal inference is that each is used in its usual sense-the one act being permissive, the other mandatory. *Johnson v. Wells Fargo Home Mortg., Inc.*, 635 F.3d 401 (February 15, 2011), states, "Although the word, 'may,' usually implies some degree of discretion, this common-sense principle of statutory construction can be defeated by obvious inferences from the structure and purpose of the statute." *Service Employees Intern. Union v. U.S.*, 598 F.3d 1110 (March 17, 2010) states, "The word 'shall' in a statute is ordinarily the language of command." *Our Children's Earth Foundation v. U.S. E.P.A.*, 527 F.3d 842 (May 23, 2008) states, "When Congress specifies an obligation and uses the word 'shall,' this denomination usually connotes a mandatory command." *Center for Biological Diversity v. U.S. Fish & Wildlife Services*, 450 F.3d 930 (June 5, 2006) states, "When 'may' and 'shall' are both used in statute, normal inference is that each is being used in its ordinary sense, one being permissive and other mandatory."

---

(2010) stated, "The word 'may' in a statute is permissive, and it denotes the right to exercise discretion." Lastly, the court in _State v. Thiel_, 158 Idaho 103 (2015), stated, "If a statute or rule is clear, specific, and mandatory with respect to what a judge must do, this is a 'ministerial act' as opposed to a discretionary or judicial one."

6.  Therefore, "Shall" means "Shall" and is mandatory upon the agency to comply with the terms as stated within the statute.  If the agency does not comply with the language of the statute, as stated therein, it amounts to "gross negligence" amongst other things.

7.  Plaintiff would also argue that these terms apply to all Constitutional and Regulatory mandates.

### VIII. VETERANS' ADMINISTRATION - OATH OF OFFICE

1.  The Oath of Office that each VA employee executes upon employment states:

> I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office on which I am about to enter. So help me God.

2.  By signing their respective Oath of Office each employee acknowledge that they accept the responsibilities of performing their duties within the perimeters of their employment. Each representative in their individual capacity signed their respective Oath freely, without being placed under duress, or coercion.

3.  The Oath commits each employee to "faithfully discharge the duties of the office on which I am about to enter."  This clearly states that they will perform their respective duties within the scope of their employment.

4. Based on the material facts of this case the defendants have miserably failed to uphold their Oath.

## IX. CAUSES OF ACTIONS

### A. BIVENS ACTION AGAINST ALL EMPLOYEES – FEDERAL CONSTITUTIONAL ISSUES

### 1ST CAUSE OF ACTION
(Violation of 1st Amendment Rights to Free Speech, and Expression)

1.  Plaintiff incorporates by reference, all preceding paragraphs as if fully restated here.

2.  The 1st Amendment states:

    Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

3.  The "OBR" solely restricts its implementation as follows:

    "Due to the abusive language and aggressive behaviors you have demonstrated during more than one conversation/correspondence with VA staff at more than one location, we are concerned about your potential for violence towards VA employees."

4.  The terms "Abusive language and Aggressive behavior" are so overbroad that the agency's representatives use of and application of these terms have unfettered power. Plaintiff has sought clarification numerous times on how the agency defines these terms "Abusive language and Aggressive behavior" so that the Plaintiff could understand what it was that the agency sought, but the agency ignored every request leaving the terms use and application overbroad.

5.  The "OBR" is an unconstitutional abridgment on its face, and as applied or threatened to be applied, of plaintiff's affirmative rights to freedom of speech and expression under the United States Constitution, First and Fourteenth Amendments.

6.  The "OBR" on its face and as applied or threatened to be applied, is an unconstitutionally overbroad restriction on speech and expressive activity.

7. The "OBR" on its face and as applied or threatened to be applied, is an unconstitutionally vague restriction on speech and expressive activity.

8. The "OBR" on its face and as applied or threatened to be applied, is a content-based and viewpoint-based restriction on speech and expressive activity.

9. The "OBR" on its face and as applied or threatened to be applied, does not serve a significant governmental interest, nor is there any personal interest other then those who seek to cause Plaintiff these undue compliances and denial of rights.

10. The "OBR" on its face and as applied or threatened to be applied, does not leave open ample alternative channels of communication.

11. The "OBR" on its face and as applied or threatened to be applied, is neither narrowly tailored nor the least restrictive means to accomplish any permissible governmental purpose sought to be served by the legislation.

12. The "OBR" on its face and as applied or threatened to be applied, violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and similar guarantees in the Idaho State Constitution by denying plaintiff free speech and expression rights allowed to others in similar situations and other protections of state and federal law.

13. Plaintiff engaged in protected speech and/or activities by:
    a. Protesting through telephone calls, and letters and/or correspondence against the agency representative's failure to adhere to the federal laws pertaining to Order of Behavioral Restrictions.
    b. Filing grievance through letters and/or correspondence against the agency representative's for acting outside the scope of their employment in violating the federal statutes regarding Order of Behavioral Restrictions.

14. Plaintiff did not harm or threaten, nor did he pose any threat to any representative of the Veterans' Administration or other veterans or guests at the facility while exercising his 1st Amendment rights.

15. As a direct and proximate result of Plaintiff's decision to exercise his 1st Amendment rights, Plaintiff was amongst other things (1) was forced to report into the VA police before movement throughout the VA facility, (2) was restricted with regards to his locomotion and liberties throughout the VA facility because he was forced to be escorted by a VA police officer everywhere he went, (3) was unlawfully seized through an unlawful Order of Behavioral Restriction, (4) was not allowed to use any other facility on the property, (5) was forced to have medical procedures performed with VA police present violating Plaintiff's rights to privacy, and (6) was watched at every turn and threatened with arrest if he did not comply. All this was done based on the agency obtaining an unlawful Order of Behavioral Restriction against the Plaintiff.

## 2nd CAUSE OF ACTION
### (Violation of 1st Amendment Rights to Petition the Government for a Redress of Grievance)

16. Plaintiff incorporates by reference, all preceding paragraphs as if fully restated here.

17. The 1st Amendment states:

Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

18. The "OBR" is an unconstitutional abridgment on its face, and as applied or threatened to be applied, of the plaintiff's affirmative rights to freedom of speech and expression rights because Plaintiff filed grievances against the government and its representatives under the United States Constitution, First and Fourteenth Amendments.

19. The "OBR" on its face and as applied or threatened to be applied, is an unconstitutionally overbroad restriction on speech and expressive activity because Plaintiff filled grievances against the government and its representatives under the United States Constitution, First and Fourteenth Amendments.

20. The "OBR" on its face and as applied or threatened to be applied, is an unconstitutionally vague restriction on speech and expressive activity because Plaintiff filled grievances against the government and Its representatives under the United States Constitution, First and Fourteenth Amendments.

21. The "OBR" on its face and as applied or threatened to be applied, is a content-based and viewpoint-based restriction on speech and expressive activity because Plaintiff filled grievances against the government and its representatives under the United States Constitution, First and Fourteenth Amendments.

22. The "OBR" on its face and as applied or threatened to be applied, does not serve a significant governmental interest in unilaterally denying a citizen the right to file grievances against governmental representatives that willfully or corruptly misuse their office and/or office by usurpation of authority and knowingly and willfully violate a citizens' rights under the Constitution and/or Federal laws.

23. The "OBR" on its face and as applied or threatened to be applied, does not leave open ample alternative channels or methods to file grievances against governmental abuse, misconduct, or malfeasance, to name a few.

24. The "OBR" on its face and as applied or threatened to be applied, is being used to deny or undermines Plaintiff's ability to apply and enforce his rights under the Constitution, Federal statutes, and/or Agency policies and procedures.

25. The "OBR" on its face and as applied or threatened to be applied, is neither narrowly tailored nor the least restrictive means to accomplish any permissible governmental purpose sought to be served by Constitutional and Statutory rights to file grievances against government.

26. The "OBR" on its face and as applied or threatened to be applied, violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and similar guarantees in the Idaho State Constitution by denying plaintiff free speech and expression rights allowed to others in similar situations and other protections of state and federal law through the agency's application of unilateral denial of the right to file grievances against the government.

27. Plaintiff engaged in protected speech and/or activities by:
a. Protesting through telephone calls, and letters and/or correspondence against the agency representative's failure to adhere to the federal laws pertaining to Order of Behavioral Restrictions.
b. Filing grievance through letters and/or correspondence against the agency representative's for acting outside the scope of their employment in violating the federal statutes regarding Order of Behavioral Restrictions.

28. Plaintiff did not harm or threaten, nor did he pose any threat to any representative of the Veterans' Administration or other veterans or guests at the facility while exercising his 1st Amendment rights.

29. As a direct and proximate result of Plaintiff's decision to exercise his 1st Amendment rights, Plaintiff was amongst other things (1) was forced to report into the VA police before movement throughout the VA facility, (2) was restricted with regards to his locomotion and liberties throughout the VA facility because he was forced to be escorted by a VA police officer

everywhere he went, (3) was unlawfully seized through an unlawful Order of Behavioral

Restriction, (4) was not allowed to use any other facility on the property, (5) was forced to have

medical procedures performed with VA police present violating Plaintiff's rights to privacy, and

(6) was watched at every turn and threatened with arrest if he did not comply.  All this was done

based on the agency obtaining an unlawful Order of Behavioral Restriction against the Plaintiff.

### 3rd CAUSE OF ACTION
#### (Retaliation in Violation of the 1st Amendment)

30. Plaintiff incorporates by reference, all preceding paragraphs as if fully restated here.

31. Plaintiff engaged in protected speech and/or activities by:
a. Protesting through telephone calls, and letters and/or correspondence against the
agency representative's failure to adhere to the federal laws pertaining to Order of Behavioral
Restrictions.
b. Filing grievance through letters and/or correspondence against the agency
representative's for acting outside the scope of their employment in violating the federal
statutes regarding Order of Behavioral Restrictions.

32. Plaintiff did not harm or threaten, nor did he pose any threat to any representative of the

Veterans' Administration or other veterans or guests at the facility while exercising his 1st

Amendment rights.

33. As a direct and proximate result of Plaintiff's decision to exercise his 1st Amendment

rights, Plaintiff was amongst other things (1) was forced to report into the VA police before

movement throughout the VA facility, (2) was restricted with regards to his locomotion and

liberties throughout the VA facility because he was forced to be escorted by a VA police officer

everywhere he went, (3) was unlawfully seized through an unlawful Order of Behavioral

Restriction, (4) was not allowed to use any other facility on the property, (5) was forced to have

medical procedures performed with VA police present violating Plaintiff's rights to privacy, and

(6) was watched at every turn and threatened with arrest if he did not comply. All this was done

based on the agency obtaining an unlawful Order of Behavioral Restriction against the Plaintiff.

4th CAUSE OF ACTION
(Violation of 5th Amendment Rights)

34. Plaintiff incorporates by reference, all preceding paragraphs as if fully restated here.

35. The 5th Amendment state:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

36. Because the OBR is and has been placed unlawfully, each and every "forced escort" was

an unreasonable seizure as defined under the 5th Amendment of he United States Constitution.

5th CAUSE OF ACTION
(Violation of 9th Amendment Rights)

37. Plaintiff incorporates by reference, all preceding paragraphs as if fully restated here.

38. The 9th Amendment states:

The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.

39. It is without dispute that Plaintiff has a right to his Constitutional rights and that any

infringement, interference with, or obstruction of asserting said rights is a tort worthy of

compensation.

40. Each federal employee of the Department of Veterans' Affairs has likewise been trained

in their respective jobs and individual liability associated with respect to their failure to perform

in accordance with their respective employment.

41. Each federal employee of the Department of Veterans' Affairs has knowledge of and has received training with regards to the violation and liabilities associated with violating individual rights.

### B. BIVENS ACTION AGAINST ALL EMPLOYEES – FEDERAL STATUTORY ISSUES

### 6th CAUSE OF ACTION
### VIOLATION OF 38 C.F.R. § 17.33(g)

42. Plaintiff incorporates by reference, all preceding paragraphs as if fully restated here.

43. 38 C.F.R. § 17.33(g) states:

"Each patient has the right to present grievances with respect to perceived infringement of the rights described in this section or concerning any other matter on behalf of himself, herself or others, to staff members at the facility in which the patient is receiving care, other Department of Veterans Affairs officials, government officials, members of Congress or any other person without fear, or reprisal."

44. 38 C.F.R. § 17.33(g) is clear, specific, and mandates that the agency cannot reprise or retaliate against the Plaintiff for filing grievances. Despite this statutory protection the agency's representatives have ignored the statutory protection and launched an attack on Plaintiff for exercising his rights.

45. Pursuant to § 17.33(g) "Each patient has the right to present grievances with respect to perceived infringement of the rights described in this section or concerning any other matter on behalf of himself." The grievances can be made to "staff members at the facility in which the patient is receiving care, other Department of Veterans Affairs officials, government officials, members of Congress or any other person." Plaintiff can file a complaint with virtually anyone for any and all "perceived infringement of rights."

46. Lastly, the statute gives the Plaintiff whistle blower protection, because the Plaintiff can make these grievance "without fear, or reprisal."

47. It is without dispute that Plaintiff has and continues to file written grievance disclosing malfeasance, misconduct, failure to perform according to the Federal statute, and/or other types of willful misconduct in office.

48. It is likewise undisputable that these defendants' have acted singularly or in collusion to constructively prevent, hinder, or obstruct Plaintiff from exercising his Constitutional, Statutory, and/or Regulatory policy and/or procedural rights.

49. These defendants have done this through their unlawfully applied "OBR." They have deliberately clouded this matter in such a way that they have failed to adhere to the legal requirements of 38 C.F.R. § 17.107.  In fact, they have failed to adhere to virtually every aspect of § 17.107.

50. Again, Plaintiff did and continues to file grievances through the form of letters and correspondence to Boise VA Medical Center personnel, Secretary of the Department of Veterans' Affairs, VISN-20 Director, members of the Inspector General's Office, the Office of General Counsel, and even members of Congress.  Plaintiff has filed federal suits trying to enforce his rights.

51. For exercising his rights under both the Constitution, Federal Statutes, and Agency regulatory policies and procedures, Plaintiff has been and continues to be reprised upon because he has exercised his Constitutional, Statutory, and/or Regulatory policies and/or procedural rights.

52. More specifically, these defendant' have continued their respective attempts to force the Plaintiff into not exercising his rights to speech and expression, together with filing grievances against the Boise VA Medical Center staff for amongst other things official Malfeasance, official

misconduct, mismanagement, failure to follow Federal Statutes and agency regulatory policies and procedures.

53. The Boise VA Medical Center has unlawfully executed an "OBR" against the Plaintiff because he has done nothing but exercise his rights to speech, expression, and filing grievances because of the willful or corrupt misconduct of these Defendants.  Furthermore, these Defendants have also failed to correct problems when issues have been brought to their attention.

54. Everything the agency's representatives are complaining about are a result of Plaintiff's letters, and correspondence that where mailed to the agency and phone calls.

55. The agency has failed to provide any evidence in the "OBR" that Plaintiff was "at a VA Medical Center" and that the Plaintiff "has or could jeopardize the health or safety of other patients, VA staff, or guests at the facility" or that the Plaintiff "otherwise interfered with the delivery of safe medical care to another patient at the facility" which are mandatory requirements under 38 C.F.R. § 17.107 and without it – that lack of information renders the actions of the agency's representatives fatally defective and thereby unlawful.

56. The agency has failed to "narrowly tailor the order" to provide any evidence that the Plaintiff was at an "VA medical facility" nor have they provided anything else as required under the statute.[13]   Additionally, the agency has failed to provide "a summary of facts and the bases

---

[13] See 38 C.F.R. § 17.107(b)(2), which states, "The order is narrowly tailored to address the patient's disruptive behavior and avoid undue interference with the patient's care."

for the need for the restrictions"[14] and the lack of information renders the actions of the agency's representatives fatally defective and thereby unlawful.

57. Furthermore, Plaintiff filed an appeal regarding the "OBR" and the agency knowingly, willfully, wantonly, deliberately, recklessly, negligently, and with egregious disregard for Plaintiff's appeal rights, refused to forward the appeal to the VISN-20 Director for a final review as mandated under 38 C.F.R. § 17.107(e).  This failure renders the actions of the agency's representatives fatally defective and thereby unlawful.

58. These employees are well aware of the statutory requirements but have willfully and knowingly acted outside the scope of their employment by refusing or otherwise failing to comply with the statute in any capacity except to utilize the "OBR" process as a retaliatory method of getting even with Plaintiff.  They have acted in a vengeful, vindictive, and callous manner to get even with the Plaintiff and have had a complete disregard for Defendant rights.

7th CAUSE OF ACTION
VIOLATION OF 38 C.F.R. § 17.33(i)

59. Plaintiff incorporates by reference, all preceding paragraphs as if fully restated here.

60. 38 C.F.R. § 17.33(i) states:

Other rights. The rights described in this section are in addition to and not in derogation of any statutory, constitutional or other legal rights.

---

[14] See 38 C.F.R. § 17.107(b)(5), which states, "The order contains an effective date and any appropriate limits on the duration of or conditions for continuing the restrictions. The Chief of Staff or designee may order restrictions for a definite period or until the conditions for removing conditions specified in the order are satisfied. Unless otherwise stated, the restrictions imposed by an order will take effect upon issuance by the Chief of Staff or designee. Any order issued by the Chief of Staff or designee shall include a summary of the pertinent facts and the bases for the Chief of Staff's or designee's determination regarding the need for restrictions."

61. 38 C.F.R. § 17.33 clearly specifies that the right as stated therein do not alter any existing rights as stated in any constitutional, statutory, or other legal rights. Therefore, this is a statutory right that works in conjunction with the 1st Amendment right to "petition the Government for a redress of grievances."

62. These respective employees knew or should have know that their actions violated this portion of the federal statute together with plaintiff's rights under the 1st Amendment. Every VA representative knows about the 1st Amendment right to file grievances.

63. These employees are well aware of the statutory requirements but have willfully and knowingly acted outside the scope of their employment by refusing or otherwise failing to comply with the statute in any capacity. They have acted in a vengeful, vindictive, and callous manner to get even with the Plaintiff and have had a complete disregard for Defendant rights.

## 8th CAUSE OF ACTION
## VIOLATION OF 38 C.F.R. § 17.107

### Point 1
### 38 C.F.R. § 17.107(a)

64. Plaintiff incorporates by reference, all preceding paragraphs as if fully restated here.

65. 38 C.F.R. § 17.107(a) states:

"For the purposes of this section: VA medical facility means VA medical centers, outpatient clinics, and domiciliaries."

66. It is undisputable that the Boise VA Medical Center is a VA medical facility as stated in 38 C.F.R. § 17.107.

67. Therefore, this is an undisputable material fact and is not an issue.

### Point 2
### 38 C.F.R. § 17.107(b)

68. Plaintiff incorporates by reference, all preceding paragraphs as if fully restated here.

69. 38 C.F.R. § 17.107(b) states:

"The time, place, and/or manner of the provision of a patient's medical care may be restricted by written order of the Chief of Staff of the VA Medical Center of jurisdiction or his or her designee if:

(1) The Chief of Staff or designee determines pursuant to paragraph (c) of this section that the patient's behavior at a VA medical facility has jeopardized or could jeopardize the health or safety of other patients, VA staff, or guests at the facility, or otherwise interfere with the delivery of safe medical care to another patient at the facility;

(2) The order is narrowly tailored to address the patient's disruptive behavior and avoid undue interference with the patient's care;

(3) The order is signed by the Chief of Staff or designee, and a copy is entered into the patient's permanent medical record;

(4) The patient receives a copy of the order and written notice of the procedure for appealing the order to the Network Director of jurisdiction as soon as possible after issuance; and

(5) The order contains an effective date and any appropriate limits on the duration of or conditions for continuing the restrictions. The Chief of Staff or designee may order restrictions for a definite period or until the conditions for removing conditions specified in the order are satisfied. Unless otherwise stated, the restrictions imposed by an order will take effect upon issuance by the Chief of Staff or designee. Any order issued by the Chief of Staff or designee shall include a summary of the pertinent facts and the bases for the Chief of Staff's or designee's determination regarding the need for restrictions.

70. Plaintiff did and continues to file grievances through the form of letters and correspondence to Boise VA Medical Center personnel, Secretary of the Department of Veterans' Affairs, VISN-20 Director, members of the Inspector General's Office, the Office of General Counsel, and even members of Congress.

71. For exercising his rights under both the Constitution, Federal Statutes, and Agency regulatory policies and procedures.  Plaintiff has been and continues to be reprised upon because he has exercised his Constitutional and statutory rights to speech and expression, and together with filing grievances against the Boise VA Medical Center staff for amongst other

things official malfeasance, official misconduct, mismanagement, failure to follow Federal statutes, and agency regulatory policies and procedures.

72. The Boise VA Medical Center has unlawfully executed an "OBR" against the Plaintiff because he has done nothing but exercise his rights to speech, expression, and filing grievances.

73. Everything the agency is complaining about is a result of Plaintiff's letter, and correspondence that were mailed to the agency.

74. The agency has failed to "narrowly tailor the order"[15] or to provide "a summary of facts and the bases for the need for the restrictions."[16] that again the Plaintiff was at an "VA medical facility" or that the Plaintiff "has or could jeopardize the health or safety of other patients, VA staff, or guests at the facility" or that the Plaintiff "otherwise interfered with the delivery of safe medical care to another patient at the facility," which is mandatory under the provisions of 38 C.F.R. § 17.107(b)(1) and the lack of information renders the actions of the agency's representatives fatally defective and thereby unlawful.

75. Plaintiff filed an appeal regarding the "OBR" and the agency knowingly, willfully, wantonly, deliberately, recklessly, and with malice refused to forward the appeal to the VISN-20 Director for a final review as mandated under 38 C.F.R. § 17.107(e).  This is a clear violation of Plaintiff's substantive and procedural due process rights and the fact that the Defendants failed

---

[15] See 38 C.F.R. § 17.107(b)(2), which states, "The order is narrowly tailored to address the patient's disruptive behavior and avoid undue interference with the patient's care."
[16] See 38 C.F.R. § 17.107(b)(5), which states, "The order contains an effective date and any appropriate limits on the duration of or conditions for continuing the restrictions. The Chief of Staff or designee may order restrictions for a definite period or until the conditions for removing conditions specified in the order are satisfied. Unless otherwise stated, the restrictions imposed by an order will take effect upon issuance by the Chief of Staff or designee. Any order issued by the Chief of Staff or designee shall include a summary of the pertinent facts and the bases for the Chief of Staff's or designee's determination regarding the need for restrictions."

or refused to forward the appeal renders the actions of the agency's representatives fatally defective and thereby unlawful.

76. 38 C.F.R. § 17.107(b) states:

"The time, place, and/or manner of the provision of a patient's medical care may be restricted by written order by the Chief of Staff of the VA Medical Center of jurisdiction or his or her designee, if:"

77. This part of the statute allows the agency to prepare and enforce an "OBR" if they comply with those provisions that are outlined in 38 C.F.R. § 17.107.

78. It is undisputable that Congress gave the Veterans' Administration the ability to restrict the patient's medical care, "IF" they comply with the preceding provisions of the statute, which will be discussed below individually as follows:

79. 38 C.F.R. § 17.107(b)(1) set forth the following:

"The Chief of Staff or designee determines pursuant to paragraph (c) of this section that the patient's behavior at a VA medical facility has jeopardized or could jeopardize the health or safety of other patients, VA staff, or guests at the facility, or otherwise interfere with the delivery of safe medical care to another patient at the facility."

80. Here the statute grants authority in these matter solely to the Chief of Staff or Designee, not in a Board or Committee. The statute also refers to paragraph (c) of this section, which clearly and specifically mandates that they comply with paragraph (c).

81. Next this section mandates that the Chief of Staff or designee (Singular) to restrict the patient if, "the patient's behavior at a VA medical facility has jeopardized or could jeopardize the health or safety of other patients, staff, or guests at the facility." This clearly mandates that the Plaintiff had to be physically present at the medical facility and the lack of information renders the actions of the agency's representatives fatally defective and thereby unlawful.

82. By Plaintiff mailing the letters, emails, and correspondence it is without dispute that the Plaintiff is not "at a VA Medical facility," nor could a letter, email, or correspondence "jeopardize the safety of others," nor could it be "disruptive to the delivery of safe medical care to another patient at the facility" and any lack of information renders the actions of the agency's representatives fatally defective and thereby unlawful.

83. The agency's representatives are clearly not in compliance with this part of the statute which renders their actions unlawful. These representatives have acted outside the standards of the statute and acted personally to get even with the Plaintiff. They have acted in a personal capacity and is thereby personally liable to Plaintiff.

84. Because these defendants have not complied with this part of the statute it would render their ability to continue futile. Despite this the agency tried to cleverly construct a series of allegations that they felt where relevant to justify their unlawful actions. These individuals have acted singularly or in collusion and as a means to harm Plaintiff by and through their fraudulently developed information and the issuance and enforcement of this unlawful "OBR."

85. Plaintiff really does not need to go on but feels it is necessary to reveal the extent of these representative's malicious disregard towards Plaintiff and his rights in this matter. Therefore, Plaintiff is going to argue the rest of the statute.

86. Next 38 C.F.R. § 17.107(b)(2) set forth that:

"The order is narrowly tailored to address the patient's disruptive behavior and avoid undue interference with the patient's care."

87. A review of the order clear shows that the agency failed to "narrowly tailor the order." The order is void of any information that justifies the issuance of this "OBR," which is important

and necessary. The lack of information renders the actions of the agency's representatives fatally defective and thereby unlawful.

88. In fact, the order is void of any information that justifies that the Plaintiff was "at the VA Medical facility," nor did they show or establish that he "would or could show that the patient has jeopardized or could jeopardize the health care or safety of anyone," nor does it address any disruptive behavior that would "interfere with the delivery of safe medical care to another patient at the facility." The order is void of any of the statutory requirements and the lack of information renders the actions of the agency's representatives fatally defective and thereby unlawful.

89. That is because they have based their actions on Plaintiff letter and correspondence that was mailed to the facility to a specific personnel. At no time was the Plaintiff "at any VA Medical Center facility," nor did the "OBR" contain any information that alleges or otherwise establish that the Plaintiff was at the Boise VA Medical Center or any other facility for that matter.

90. The agency's representatives have miserably failed to establish the essential requirements as mandated under § 17.107(b)(1) and (2) rendering their action personal because they are required to comply with the Constitution, Federal Statutes, and Agency regulatory policies and procedures.

91. These employees are well aware of the statutory requirements but have willfully and knowingly acted outside the scope of their employment by refusing or otherwise failing to comply with the statute in any capacity. They have acted in a vengeful, vindictive, and callous manner to get even with the Plaintiff.

92. Next 38 C.F.R. § 17.107(b)(3) sets forth that:

"The order is signed by the Chief of Staff or designee, and a copy is entered into the patient's permanent medical record."

93. Here the alleged order was signed by an alleged designee.   However, it was not entered into the "patient's permanent medical record."

94. These employees are well aware of the statutory requirements but have willfully and knowingly acted outside the scope of their employment by refusing or otherwise failing to comply with the statute in the capacity as stated in § 17.107(b)(3).  They have acted in a vengeful, vindictive, and callous manner to get even with the Plaintiff through the issuance of this unlawful "OBR," which is nothing more than their efforts to force Plaintiff into giving up the exercising of his rights.

95. Next 38 C.F.R. § 17.107(b)(4) sets forth that:

"The patient receives a copy of the order and written notice of the procedure for appealing the order to the Network Director of jurisdiction as soon as possible after issuance; and."

96. Plaintiff did receive a copy of the "OBR."  However, the agency clearly crafted the "OBR" in a manner that they could in their minds surreptitiously create and justify the "OBR." Additionally, the "OBR" contains a date and the effective date being one in the same.  Then placed the "OBR" in the mail several dates later  taking approximately 10 days away from the thirty (30) days allowed to appeal.  The manner of issuance deprives the patient of his right to a full 30 days to appeal the matter as is allowed under § 17.107(e).

97. The Court should establish that the agency is required to make the effective date a date that does not deprive the Plaintiff of his full 30 days to appeal to the Network Director.

98. These employees are well aware of the statutory requirements but have willfully and knowingly acted outside the scope of their employment by refusing or otherwise failing to

comply with the statute in any capacity.  They have acted in a vengeful, vindictive, and callous manner to get even with the Plaintiff and have had a complete disregard for Defendant rights.

99. Next 38 C.F.R. § 17.107(b)(5) sets forth that:

"The order contains an effective date and any appropriate limits on the duration of or conditions for continuing the restrictions. The Chief of Staff or designee may order restrictions for a definite period or until the conditions for removing conditions specified in the order are satisfied. Unless otherwise stated, the restrictions imposed by an order will take effect upon issuance by the Chief of Staff or designee. Any order issued by the Chief of Staff or designee shall include a summary of the pertinent facts and the bases for the Chief of Staff's or designee's determination regarding the need for restrictions."

100. Again , the Court should establish that the agency is required to make the effective date a date that would not deprive a patient of their right to the full 30 days as allowed under § 17.107(e).

101. Next the statute states, "Any order issued by the Chief of Staff or designee shall include a summary of the pertinent facts and the bases for the Chief of Staff's or designee's determination regarding the need for restrictions" and the lack of information renders the actions of the agency's representatives fatally defective and thereby unlawful.

102. Likewise, the Order fails to contain or is otherwise void of any "summary of pertinent facts" nor is there any "bases for the Chief of Staff's or designee's determination regarding the need for restriction." The lack of information renders the actions of the agency's representatives fatally defective and thereby unlawful.

103. These employees are well aware of the statutory requirements but have willfully and knowingly outside the scope of their employment by refusing or otherwise failing to comply with the statute in any capacity.  They have acted in a vengeful, vindictive, and callous manner to get even with the Plaintiff and have had a complete disregard for Defendant rights.

Point 3
38 C.F.R. § 17.107(c)

104. Plaintiff incorporates by reference, all preceding paragraphs as if fully restated here.

105. 38 C.F.R. § 17.107(c) states:

"In making determinations under paragraph (b) of this section, the Chief of Staff or designee must consider all pertinent facts, including any prior counseling of the patient regarding his or her disruptive behavior or any pattern of such behavior, and whether the disruptive behavior is a result of the patient's individual fears, preferences, or perceived needs. A patient's disruptive behavior must be assessed in connection with VA's duty to provide good quality care, including care designed to reduce or otherwise clinically address the patient's behavior."

106. Here § 17.107(c) mandates that the "Chief of Staff or designee must consider all pertinent facts." The agency flagrantly violates this because the agency will not notify or allow a patient to participate in this process. Thereby denying the patient of the right to defend himself before this unlawful board/committee. Plaintiff has repeatedly demanded to be present so that he may present evidence in his defense, but again the agency flatly denies the Plaintiff of both.

107. The agency has absolutely no "prior counseling of the patient regarding his or her disruptive behavior or any pattern of such behavior." In fact, the agency only has letters and correspondence, which were mailed to the Director, Chief of Staff, Disruptive Behavioral Committee, and others in management revealing misconduct, mismanagement, and the like.

108. The agency uses this method to deny the Plaintiff the right to convey defenses against their unlawful action. The agency's representative effectively and constructively denies the Plaintiff the right to speech, expressions, and filing oral grievances.

109. These employees are well aware of the statutory requirements and their respective obligations to comply within the scope of their employment but have willfully and knowingly acted outside the scope of their employment by refusing or otherwise failing to comply with the

statute in any capacity. They have acted in a vengeful, vindictive, and callous manner to get even with the Plaintiff and have had a complete disregard for Defendant rights all because Plaintiff has caught on to their blatant disregard to the mandates placed before them, their lazy approach to their work, unprofessional ethics and behavior, and now angry that it is all coming out.

110. Therefore, the agency has miserably failed to comply with this part of the statute and the "OBR" constructively fails to contain the necessary information and any lack of information renders the actions of the agency's representatives fatally defective and thereby unlawful.

Point 4
38 C.F.R. § 17.107(d)

111. Plaintiff incorporates by reference, all preceding paragraphs as if fully restated here.

112. 38 C.F.R. § 17.107(d) states:

> The restrictions on care imposed under this section may include but are not limited to:
> (1) Specifying the hours in which nonemergent outpatient care will be provided;
> (2) Arranging for medical and any other services to be provided in a particular patient care area (e.g., private exam room near an exit);
> (3) Arranging for medical and any other services to be provided at a specific site of care;
> (4) Specifying the health care provider, and related personnel, who will be involved with the patient's care;
> (5) Requiring police escort; or
> (6) Authorizing VA providers to terminate an encounter immediately if certain behaviors occur.

113. Because the agency failed or otherwise refused to comply with 38 C.F.R. § 17.107 the agency could not implement the provisions of 38 C.F.R. § 17.107(d) thusly rendering their action unlawful.

114. The agency representatives prepared, implemented, and are enforcing an unlawful Order. And by doing so they have acted outside of their employment and have vengefully,

vindictively, and with gross malice caused this "OBR" to be and continue to be enforced, which deprives Plaintiff of his rights to liberty and locomotion throughout the VA facility. They have caused Plaintiff to be followed by a VA police officer which is embarrassing and humiliating to say the least.

115. These employees are well aware of the statutory requirements and their required obligations to comply within the scope of their employment but have willfully and knowingly acted outside the scope of their employment by refusing or otherwise failing to comply with the statute in any capacity. They have acted in a vengeful, vindictive, and callous manner to get even with the Plaintiff and have had a complete disregard for Defendant rights.

### Point 5
### 38 C.F.R. § 17.107(e)

116. Plaintiff incorporates by reference, all preceding paragraphs as if fully restated here.

117. 38 C.F.R. § 17.107(e) states:

"The patient may request the Network Director's review of any order issued under this section within 30 days of the effective date of the order by submitting a written request to the Chief of Staff. The Chief of Staff shall forward the order and the patient's request to the Network Director for a final decision. The Network Director shall issue a final decision on this matter within 30 days. VA will enforce the order while it is under review by the Network Director. The Chief of Staff will provide the patient who made the request written notice of the Network Director's final decision."

118. 38 C.F.R. § 17.107(e) gives the exclusive right to the Plaintiff to determine whether or not he wants to "request the Network Director's review of the order under this section within 30 days of the effective date of the order by submitting a written request to the Chief of Staff." This is a statutorily created substantive and procedural due process right.

119. On June 26, 2017, Plaintiff prepared, executed, and mailed his appeal to the Chief of Staff, which the "OBR" clearly requires.

---

COMPLAINT                                                                 Page 43 of 46

120. This appeal was timely filed and mailed to the Boise VA Medical Center on the same day, by Certified Return Receipt Mail #7015 1520 0000 2329 8947.  It was also mailed to the VISN-20 Director on the same day by Certified Return Receipt Mail #7015 1520 0000 2329 8923.

121. On June 27, 2017, the Appeal was received by the VISN-20 Director.

122. On June 28, 2017, the Appeal was received by the Boise VA Medical Center Director.

123. Plaintiff mailed this appeal to both the Boise VA Medical Center and the VISN-20 Network Director because the agency representatives failed or refused to forward a previous appeal.  The statute does not prohibit the Plaintiff from mailing the "OBR" to the VISN-20 Network Director.  This was done to ensure that the Network Director actually received the documents and was notified of the appeal.

124. Like previously stated, the representatives of the Boise VA Medical Center failed or otherwise refused to forward the appeal to the VISN-20 Network Director, not once, but twice. This deprived the Plaintiff of his right to have this matter reviewed by the Network Director as authorized under the statute.

125. This act was knowingly and willfully made by these representatives which deprived the Plaintiff of this substantive and procedural due process rights to the appeal/review.

126. These employees are well aware of the statutory requirements but have willfully and knowingly acted outside the scope of their employment by refusing or otherwise failing to comply with the statute in any capacity.  They have acted in a vengeful, vindictive, and callous manner to get even with the Plaintiff and have had a complete disregard for Defendant rights.

## X. CONCLUSIONS

WHEREFORE, Plaintiff prays that:

1. The Court determine that both of the Order of Behavioral Restrictions are unlawful; rescind and remove both from Plaintiff' records.

2. The Court determine that the Defendant(s) knowingly and willfully failed or otherwise refused to comply with the mandatory provisions of 38 C.F.R. § 17.107 on both of the Order of Restrictions.

3. The Court determine that the Defendant(s) acted with gross negligence and refused or failed to adhere to the statutory requirements of 38 C.F.R. § 17.107 on both of the Order of Behavioral Restrictions.

4. The Court determine that the Defendant(s) knowingly and willfully had an egregious disregard for Plaintiff's rights under the Constitution, Statute, and/or Regulatory mandates and unlawfully prepared, executed, and enforced both of the Order of Behavioral Restrictions.

5. The Court determine that the Defendant(s) knowingly and willfully violated Plaintiff's rights under the 1st Amendment regarding speech and expression.

6. The Court determine that the Defendant(s) knowingly and willfully violated Plaintiff's 1st Amendment rights to grievances.

7. The Court determine that the Defendant(s) knowingly and willfully violated Plaintiff's rights under 38 C.F.R. § 17.33(g) and/or (i).

8. The Court determine that the Plaintiff blew the whistle on these federal employees for reasons of, but not limited to willful and/or corrupt conduct in office, and/or malfeasance.

9. The Court award nominal damages, which is appropriate in the sum of $10,000.00 from each Defendant.

10. The Court award punitive damages in the amount of $50,000.00 from each Defendant or in the alternative an amount the Court determines appropriate.

11. The Court award all court costs.

12. The Court award all service fees.

13. The Court award all administrative costs for mail, paper, postage, envelopes etc.

14. The Court award all transportation costs or fees, if any.

15. The Court award all parking costs, if any.

16. The Court award any other costs the court may deem just and appropriate.

Dated: December 13th, 2018.


Respectfully submitted,


Paul Lietz